Estado Libre Asociado de Puerto Rico
**TRIBUNAL DE APELACIONES**
**PANEL VI**

| | | |
|---|---|---|
| Cooperativa de Ahorro y Crédito de la Federación de Maestros ("FEDECOOP")<br><br>Apelante<br><br>vs.<br><br>Banco Cooperativo de Puerto Rico ("BANCOOP")<br><br>Apelado | TA2025AP00696 | **APELACIÓN** procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Civil Núm.: SJ2023CV09528<br><br>Sobre: Incumplimiento de Contrato, Daños |

Panel integrado por su presidente, el Juez Rivera Colón, el Juez Monge Gómez y la Jueza Prats Palerm.

Rivera Colón, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 14 de enero de 2026.

Comparece ante nos la Cooperativa de Ahorro y Crédito de la Federación de Maestros (FEDECOOP o apelante) y nos solicita que revoquemos la Sentencia emitida, el 18 de noviembre de 2025, por el Tribunal de Primera Instancia, Sala Superior de San Juan (TPI). Mediante el referido dictamen, el foro primario desestimó la Demanda presentada por el apelante sobre incumplimiento de contrato, más daños y perjuicios. En consecuencia, le impuso el pago de honorarios de abogado por temeridad.

Examinada la solicitud de autos, la totalidad del expediente y el estado de derecho aplicable, se confirma el dictamen apelado bajo los fundamentos que expondremos a continuación.

**I.**

El caso de autos tuvo su génesis el 11 de octubre de 2023, cuando FEDECOOP demandó al Banco Cooperativo de Puerto Rico (BANCOOP o apelado) por un alegado incumplimiento de contrato.

Señaló que, el señor Pedro García Figueroa (Sr. García Figueroa), ex presidente de FEDECOOP, adquirió una cartera de préstamos por la cantidad de $3,217,830.13, pertenecientes a la Cooperativa de Ahorro y Crédito Sol (SOLCOOP). Indicó que esta transacción se llevó a cabo sin la autorización de la Junta de Directores de FEDECOOP y en violación a los reglamentos internos de la institución. Especificó que, la transferencia debía contar con dos (2) firmas del personal autorizado, según consta en la resolución corporativa. Añadió que, si el apelado hubiera cumplido con sus obligaciones contractuales, la compra de la cartera de préstamos nunca se hubiera realizado. Por ello, solicitó la devolución del dinero, más la indemnización de los daños y perjuicios sufridos a raíz de esto.

Por su parte, el 21 de febrero de 2024, BANCOOP presentó la Contestación a Demanda en la cual aceptó que, el Sr. García Figueroa solicitó el depósito de un cheque de gerente proveniente del Banco Popular de Puerto Rico (BPPR) por la cantidad alegada. Consecuentemente, este solicitó y autorizó la transferencia hacia SOLCOOP mediante una carta con su firma. Sin embargo, el apelado argumentó que, FEDECOOP debió haber evitado o mitigado los daños que pretende reclamar. Insistió que el contrato suscrito entre las partes le concede al banco cierta discreción para aprobar las transferencias que ocurren conforme a los procesos operacionales de la apelante. Sostuvo que, la cláusula 1.7.1 dispone que, pasados los 10 días del recibo del estado de cuenta, FEDECOOP renuncia a cualquier reclamación en contra de BANCOOP.

Luego de varias incidencias procesales, que incluyen el descubrimiento de prueba, el 11 de agosto de 2025, BANCOOP presentó una Moción de Sentencia Sumaria. Mediante esta, el apelado presentó 97 hechos incontrovertidos de los cuales aseguró

que, no existen controversias que impidan la adjudicación del pleito. Reiteró que el contrato le reconoce amplia discreción para aprobar o rehusar transferencias en virtud de las prácticas normales y corrientes, o cuando así lo crea conveniente. Especificó que la transferencia cuestionada provino de una transacción que se originó en otra institución bancaria; y la cual contaba con la firma de dos (2) oficiales autorizados por la resolución corporativa. Incluso, señaló que este tipo de negocio se realizó en otras ocasiones para la compra de carteras de préstamo como la que nos ocupa.

Por otro lado, alegó que, de existir algún daño este es resultado de las propias obligaciones de la apelante con la institución financiera. BANCOOP indicó que la apelante tenía el deber de notificarle sobre cualquier irregularidad que surgiera de los estados bancarios en un término de 10 días. De lo contrario, equivale a una renuncia de una reclamación posterior. Sostuvo que FEDECOOP tuvo conocimiento de las transferencias a través de dos (2) estados bancarios emitidos en febrero de 2022. Sin embargo, no es hasta 10 meses más tarde que alegadamente advino en conocimiento de la referida transacción.

En la alternativa, informó que la Cláusula 1.3.4 del contrato releva de responsabilidad al banco en cualquier caso de falsificación, emisión no autorizada de cheques o transferencias electrónicas contra la cuenta, salvo los daños sufridos a consecuencia de actos intencionales o negligencia crasa por los funcionarios del banco. Finalmente, solicitó al TPI el pago de honorarios por concepto de temeridad. Arguyó que, FEDECOOP presentó la Demanda con pleno conocimiento de que no hubo un incumplimiento contractual de parte del apelado, que no sufrió daños causados por estos y tampoco levantó oportunamente reparo alguno contra la transacción impugnada. Insistió en que la

temeridad de FEDECOOP constituye un abuso del proceso judicial que amerita la desestimación de la Demanda y la imposición de honorarios de abogado a favor de BANCOOP.

Posteriormente, el 22 de septiembre de 2025, FEDECOOP presentó su Oposición a Sentencia Sumaria. Argumentó que, la discreción conferida es conforme al cumplimiento de los procedimientos pactados. Aceptó que no es responsabilidad de BANCOOP la falta de autorización para la compra de préstamos. No obstante, insistió en que estos omitieron los deberes establecidos en la resolución corporativa, toda vez que, la carta enviada por el Sr. García Figueroa no incluye las dos (2) firmas del personal autorizado. Concluyó que, si BANCOOP hubiera seguido los procedimientos establecidos, probablemente hubiera evitado que se llevara a cabo la transferencia a SOLCOOP. Por último, sobre los daños, arguyó que el hecho de que su situación económica sea estable no significa que no ha sufrido pérdidas a raíz de la transacción realizada.

Conforme a lo ordenado, el 20 de octubre de 2025, BANCOOP presentó la Réplica a Oposición a Moción de Sentencia Sumaria. Señaló que, el apelante no controvirtió ninguno de los hechos propuestos por este, conforme a la Regla 36.3(b) de Procedimiento Civil, 32 LPRA Ap. V, R. 36.3 (b). El apelado insistió en que no existe controversia alguna que impida que se dicte una sentencia sumaria a su favor. Además, detalló que las defensas de manos sucias y *exceptio non adimpleti contractus*, son defensas afirmativas que le asisten a la parte demandada. Puntualizó que, la actuación del Sr. García Figueroa era consistente con otras compras previas que no contaban con la intervención de la Junta de Directores de FEDECOOP. Arguyó que era responsabilidad de la apelante revisar los estados bancarios y objetarlos oportunamente.

Examinados los argumentos de las partes, el 18 de noviembre de 2025, el foro primario emitió su Sentencia en la cual consecuentemente, formuló las siguientes determinaciones de hechos incontrovertidos:

*1. FEDECOOP es una cooperativa de ahorro y crédito creada al amparo de la Ley Núm. 255 del 28 de octubre de 2002, Ley de sociedades cooperativas de ahorro y crédito de 2002.*

*2. BANCOOP es la institución bancaria cooperativa creada por ley para proveer integración financiera y facilitar medios crediticios a las cooperativas en Puerto Rico y a la comunidad en general.*

*3. A febrero 2022, el presidente ejecutivo de FEDECOOP era el Sr. García.*

*4. Para febrero 2022, el gerente de operaciones y contador interno de FEDECOOP era el Sr. Fernando L. Zavala Ruíz (Zavala Ruíz).*

*5. Zavala Ruíz estaba a cargo de emitir cheques, realizar conciliaciones bancarias, manejar cuentas por pagar y por cobrar, procesar la nómina, supervisar la caja, gestionar depósitos directos, originar transferencias, registrar pagos de nómina y preparar informes económicos.*

*6. Sr. García renunció efectivamente el 21 de marzo de 2022.*

*7. Zavala Ruíz fue nombrado presidente ejecutivo interino de FEDECOOP. En julio 2022 Zavala Ruíz era presidente ejecutivo de FEDECOOP.*

*8. El 5 de junio de 2015, FEDECOOP designó a García Figueroa, Adelita Álvarez Reyes (Álvarez Reyes) y Zavala Ruíz como las personas autorizadas para realizar transacciones bancarias de las cuentas de FEDECOOP.*

*9. Para estar autorizadas las transacciones bancarias al menos debían contener 2 firmas conjuntamente de García Figueroa, Álvarez Reyes o Zavala Ruíz.*

*10. El 15 de enero de 2000, BANCOOP y FEDECOOP otorgaron un Contrato de cuenta súper ahorros estableciendo los términos y condiciones aplicables a las transacciones que se efectúen bajo la Cuenta Súper Ahorro 90-022644-69 ("cuenta de ahorro") de FEDECOOP en BANCOOP.*

*11. 22 de octubre de 2020, FEDECOOP y BANCOOP otorgaron un Contrato de cuenta corporativa (el o del "Contrato") de cómo se iba a reglamentar la forma y manera que se regirán sus obligaciones y*

*responsabilidades, con respecto a la cuenta de ahorro de FEDECOOP en BANCOOP.*

*12. El Contrato tendrá una duración de cinco (5) años, comenzando el 1ro de diciembre de 2020 y terminando el 30 de noviembre de 2025".*

*13. Mediante el Contrato, FEDECOOP autorizó a BANCOOP a realizar múltiples transacciones desde su cuenta, incluyendo depósitos, cambio de cheques, transferencias.*

*14. BANCOOP está autorizado a pagar y a cargar contra la Cuenta los cheques o transferencias electrónicas que sean libradas u originadas por la Cooperativa bajo las firmas autorizadas de los oficiales de FEDECOOP que a tales efectos hayan sido designados por ésta".*

*15. BANCOOP no será responsable en ningún caso de falsificación, o de la emisión no autorizada de cheques o transferencias electrónicas contra la cuenta de FEDECOOP.*

*16. BANCOOP ejecutará las transferencias electrónicas de fondos siguiendo los procesos operacionales, medidas de seguridad y controles internos que de tiempo en tiempo estime apropiados, los cuales la Cooperativa acepta como razonables. Toda transferencia ejecutada de conformidad con dichos procedimientos, se entenderán como debidamente autorizados por la Cooperativa".*

*17. FEDECOOP está obligada a examinar los estados de cuenta que le emite BANCOOP y notificar cualquier discrepancia dentro de los próximos diez (10) días calendario desde que está disponible el estado de cuenta.*

*18. FEDECOOP tiene la responsabilidad de realizar una verificación razonable de los estados de cuenta y/o información que le provee BANCOOP para evitar o mitigar daños que pueda recibir FEDECOOP.*

*19. FEDECOOP se acogió a los servicios de BANCOOP asumiendo responsabilidad y se obligó a indemnizar y a relevar de responsabilidad a BANCOOP por cualquier reclamación , demanda, costo, honorarios, pérdida o gasto de cualquier naturaleza a que pueda BANCOOP estar sujeto directa o indirectamente por errores o actuaciones negligentes o intencionales de FEDECOOP, sus empleados, agentes, representantes o personal contratado por éstas en la utilización de los servicios provistos por BANCOOP y con la ejecución de cualquier instrucción relacionada con los servicios.*

*20. FEDECOOP recibió un estado de cuenta por parte de BANCOOP relacionado al periodo, de 1 al 28 de febrero de 2022, que incluye siete (7) transacciones.*

*21. Ocurrió una transacción de depósito de $3,217,830.13 el 16 de febrero de 2022 y una transferencia de esa suma a SOLCOOP.*

*22. 16 de febrero de 2022 FEDECOOP retiro de la cuenta de Banco Popular de Puerto Rico (BPPR) la cantidad de $3,217,830.13.*

*23. El 16 de febrero de 2022, García Figueroa en representación de FEDECOOP, compró una cartera de 131 préstamos de vehículos usados a SOLCOOP.23*

*24. El 15 de febrero el Sr. Zavala a solicitud García Figueroa emitió el cheque de FEDECOOP número 17587 por la suma de $3,217,830.13.*

*25. El cheque número 17587 era para pedirle a BPPR que emitiera un cheque de gerente.*

*26. El cheque número 17587 contiene las firmas de García Figueroa y de Álvarez Reyes.*

*27. El cheque número 17587 de $3,217,830.13 era para depositarlo en la cuenta de FEDECOOP en BANCOOP y luego transferir la suma de $3,217,830.13 a la cuenta de SOLCOOP.*

*28. García Figueroa remitió un correo electrónico a BANCOOP, con copia a Zavala Ruíz, en la que envió una carta firmada por el primero. Solicita a la Sra. Ivelisse Maduro de BANCOOP la transferencia de $3,217,830.13 de la cuenta de FEDCOOP en BANCOOP a la cuenta de SOLCOOP.*

*29. Toda la transacción bancaria, desde la emisión del cheque de FEDECOOP de BPPR, la solicitud del cheque de gerente, su depósito en la cuenta de FEDECOOP en BANCOOP hasta su transferencia a la cuenta de SOLCOOP se hizo con el objetivo de pagar por la compra de la cartera de préstamos a SOLCOOP.*

*30. El 16 de febrero de 2022, FEDECOOP comenzó a recibir los ingresos por los préstamos comprados a SOLCOOP.*

*31. El Comité de Finanzas e Inversiones (Comité de Finanzas) evalúa los informes económicos mensuales de FEDECOOP donde analizan los resultados de económicos, mes a mes, se compara los resultados del último mes con el anterior.*

*32. Los informes económicos se discutían mensualmente donde era evaluado, aprobado y firmado por cada uno de los miembros del Comité de Finanzas.*

*33. Los miembros del Comité de Finanzas forman parte de la junta de directores de FEDECOOP.*

*34. El 29 de septiembre de 2022, Zavala Ruíz y la junta de directores de FEDECOOP discutieron la cartera de préstamos de SOLCOOP.*

*35. Previo al 29 de septiembre de 2022, FEDECOOP no envió comunicación alguna a BANCOOP con relación a la autorización de la transferencia de los $3,217,830.13 de FEDECOOP a SOLCOOP.*

*36. El 20 de diciembre de 2022, Rivera Marrero remitió a Sáez López una misiva relacionada con la transacción de la compra de la cartera de préstamos de SOLCOOP y solicitó una reunión para el 17 de enero de 2023.*

*37. En la reunión del 17 de enero de 2023, Rivera Marrero, la Sra. Grantham (Grantham) y Jorge L. Marchand Heredia (Marchand Heredia) en representación de FEDECOOP solicitaron que se investigara la transacción relacionada a la compra de la cartera de préstamos de SOLCOOP y BACOOP solicitó que lo hicieran por escrito.*

*38. El 27 de enero de 2023, Rivera Marrero envió misiva a BANCOOP en indicó que la transacción no había sido autorizada por la junta de directores de FEDECOOP y solicitó formalmente a BANCOOP que iniciara una investigación con relación a las circunstancias que dieron lugar a la transacción.*

*39. FEDECOOP y Comité Ejecutivo de COSSEC (COSSEC) atribuyeron la responsabilidad de la compra de las carteras de préstamos a García Figueroa.*

El foro de instancia destacó que, según el contrato, el apelante tenía un término de 10 días para impugnar cualquier transacción realizada. Consecuentemente, señaló que el apelante tuvo pleno conocimiento de las transacciones realizadas. Especificó que, del cheque emitido por el BPPR surge la firma del Sr. García Figueroa y el Sr. Zavala Ruiz. Inclusive, de la comunicación solicitando el pago a SOLCOOP surge que se incluyó copia este último. Además, recalcó que la transacción se reflejó en el estado de cuenta emitido para el mes de febrero de 2022.

Por otro lado, el TPI determinó que del convenio entre las partes surge que se relevó a BANCOOP de cualquier responsabilidad por la falsificación, emisión no autorizada de cheques o transferencias electrónicas contra la cuenta. A esos fines, resolvió que BANCOOP cumplió a cabalidad con sus obligaciones contractuales y actuó dentro del marco de autorización conferido por la apelante. Concluyó que FEDECOOP

omitió su deber de vigilancia, fiscalización y notificación; lo cual creó las condiciones que dieron lugar a la controversia actual. Finalmente, impuso el pago de honorarios de abogado por temeridad, toda vez que FEDECOOP presentó un pleito sin fundamento fáctico o jurídico.

Por su parte, el 18 de diciembre de 2025, FEDECOOP presentó el recurso que nos ocupa, mediante el cual imputó la comisión de los siguientes errores:

> 1. *Incurrió en error el Honorable Tribunal de Primera Instancia al emitir una sentencia sumaria cuando existían controversias de hechos materiales que le impedían determinar que no hubo incumplimiento de contrato y debió celebrar un juicio plenario.*
>
> 2. *Incurrió en error el Honorable Tribunal al hacer una determinación de temeridad de la parte apelante a pesar que no estaba los elementos para la misma.*

El 19 de diciembre de 2025, este Tribunal emitió una Resolución mediante la cual se le otorgó al apelado un término vencedero el 29 de diciembre de 2025, para la presentación de su postura. Conforme a lo ordenado, BANCOOP presentó su Alegato en Oposición a Apelación.

Con el beneficio de la comparecencia de ambas partes, procedemos a resolver.

## II.

### A.

Es norma reiterada que, la sentencia sumaria es la herramienta procesal que procura la solución rápida, justa y económica de aquellos casos en los que no existen hechos materiales en controversia que ameriten la celebración de un juicio. *Soto y otros v. Sky Caterers,* 2025 TSPR 3, 215 DPR ___ (2025); *Oriental Bank v. Caballero García,* 212 DPR 678 (2023). En tal caso, la Regla 36.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 36.1, permite la presentación de una moción de sentencia sumaria

respaldada en declaraciones juradas o en aquella evidencia que demuestre la inexistencia de una controversia sustancial de hechos esenciales y pertinentes. *Oriental Bank v. Perapi et al.*, 192 DPR 7, 25 (2014); *SLG Zapata-Rivera v. J.F. Montalvo*, 189 DPR 414, 430 (2013).

Cónsono con lo anterior, la Regla 36.3(a) de Procedimiento Civil, 32 LPRA Ap. V, R. 36. 3, instaura los requisitos de forma respecto a esta moción:

> *(1) Una exposición breve de las alegaciones de las partes;*
>
> *(2) los asuntos litigiosos o en controversia;*
>
> *(3) la causa de acción, reclamación o parte respecto a la cual es solicitada la sentencia sumaria;*
>
> *(4) una relación concisa y organizada en párrafos enumerados, de todos los hechos esenciales y pertinentes sobre los cuales no hay controversia sustancial, con indicación de los párrafos o las páginas de las declaraciones juradas u otra prueba admisible en evidencia donde se establecen los mismos, así como de cualquier otro documento admisible en evidencia que se encuentre en el expediente del tribunal;*
>
> *(5) las razones por las cuales debe ser dictada la sentencia, argumentando el derecho aplicable, y*
>
> *(6) el remedio que debe ser concedido.*

Por su parte, quien presente el escrito de oposición a la sentencia sumaria también tiene que cumplir con los requisitos de la Regla 36.3(c) de Procedimiento Civil, *supra*. A tales fines, la parte opositora puede derrotar tal solicitud si presenta un escrito que establezca la existencia de hechos esenciales[1] en controversia:

> *En la oposición a una solicitud de sentencia sumaria, el promovido debe, como parte de su carga, puntualizar aquellos hechos propuestos que pretende controvertir y, si así lo desea, someter hechos materiales adicionales que alega no están en disputa y que impiden que se dicte una sentencia sumaria en su contra. Claro está, para cada uno de estos supuestos deberá hacer referencia a la prueba específica que sostiene su posición según exige la Regla 36.3. En otras palabras, la parte opositora tiene el peso de presentar evidencia*

---

[1] Según la jurisprudencia, un hecho material es aquel que puede afectar el resultado de la reclamación de acuerdo con el derecho sustantivo aplicable. *Oriental Bank v. Caballero García, supra,* a la pág. 679.

*sustancial que apoye los hechos materiales que alega están en disputa. León Torres v. Rivera Lebrón,* 204 DPR 20, 44 (2020); *Roldán Flores v. M. Cuebas et al.,* 199 DPR 664, 677 (2018).

Una vez se presente la solicitud de sentencia sumaria y su respectiva oposición, el foro primario deberá: (1) analizar todos los documentos incluidos en ambas mociones y aquellos que obren en el expediente del tribunal; y (2) determinar si la parte opositora controvirtió algún hecho material o si hay alegaciones en la demanda que no han sido refutadas en forma alguna por los documentos. *Consejo Tit. v. Rocca Dev. Corp. et als.,* 25 TSPR 6, 215 DPR __ (2025); *Abrams Rivera v. E.L.A.,* 178 DPR 914, 933 (2010). En cuanto a los documentos presentados, "éstos deben verse de la forma más favorable para la parte promovida, concediéndole a ésta el beneficio de toda inferencia razonable que se pueda derivar de ellos". *Medina v. M.S. & D. Química P.R., Inc.,* 135 DPR 716, 735 (1994); *Corp. Presiding Bishop CJC of LDS v. Purcell,* 117 DPR 714, 721 (1986).

No obstante, como regla general, no es aconsejable dictar sentencia sumaria si hay asuntos de credibilidad que ameritan la celebración de un juicio. A tales efectos, el Tribunal Supremo de Puerto Rico ha validado la aplicación de este mecanismo siempre y cuando no existan controversias esenciales sobre hechos materiales:

> *[N]o es aconsejable utilizar la moción de sentencia sumaria en casos en donde existe controversia sobre elementos subjetivos, de intención, propósitos mentales o negligencia, o cuando el factor de credibilidad es esencial y está en disputa. Soto v. Hotel Caribe Hilton, 137 DPR 294 (1994). Sin embargo, esto no impide utilizar el mecanismo de sentencia sumaria en reclamaciones que requieren elementos subjetivos o de intención —como pasa en un caso de discrimen— cuando de los documentos a ser considerados en la solicitud de sentencia sumaria surge que no existe controversia en cuanto a los hechos materiales. Ramos Pérez v. Univisión, 178 DPR 200, 219 (2010).*

Efectuado ese análisis, el tribunal podrá dictar sentencia sumaria "si queda claramente convencido de que tiene ante sí, de forma no controvertida, todos los hechos materiales pertinentes y que es innecesaria una vista en los méritos". *Birriel Colón v. Econo y Otro*, 213 DPR 80, 91 (2023); *SLG Fernández-Bernal v. RAD-MAN et al.*, 208 DPR 310, 334 (2021). La concesión de este recurso procede si de la prueba que acompaña a la moción surge preponderantemente la inexistencia de controversia sobre hechos medulares. *CSM v. ELA*, 2025 TSPR 78, 216 DPR ___ (2025); *Cruz, López v. Casa Bella y otros*, 213 DPR 980, 993 (2024). Es decir, el foro primario deberá dictar sentencia sumaria cuando ante los hechos materiales no controvertidos: (1) el promovido no puede prevalecer frente al derecho aplicable, y (2) el tribunal cuenta con la verdad de todos los hechos necesarios para resolver la controversia. *Oriental Bank v. Caballero García*, *supra*, a la pág. 679; *Mejías et al. v. Carrasquillo et al.*, 185 DPR 288, 299 (2012).

Por otra parte, nuestro ordenamiento jurídico procesal reconoce la sentencia sumaria por insuficiencia de prueba en aquellos casos donde la parte promovente alega que el adversario no cuenta con suficiente evidencia para prevalecer en el juicio. *Medina v. M.S. & D. Química P.R., Inc.,* supra, a la pág. 726. Bajo esta modalidad, una vez que las partes han realizado un adecuado y apropiado descubrimiento de prueba, el promovente puede solicitar la sentencia sumaria alegando insuficiencia de prueba por parte del promovido. *Íd.*

Bajo esta modalidad, en *Ramos Pérez v. Univisión, supra* se indicó que el promovente debe demostrar que: 1. la vista es innecesaria; 2. el demandante no cuenta con evidencia suficiente para probar algún hecho esencial; 3. como cuestión de derecho procede la desestimación de la reclamación.

Así, pues, para presentar una moción de sentencia sumaria por insuficiencia de prueba, se debe de haber finalizado el procedimiento de descubrimiento de prueba. Bajo este crisol doctrinario, al presentarse una moción de sentencia sumaria por insuficiencia de prueba, el promovente tiene el peso de demostrar que se ha llevado a cabo un descubrimiento de prueba completo, adecuado y apropiado. Véase *Medina v. M.S. & D. Química P.R. Inc., supra.* Cónsono con lo anterior, para derrotar una moción de sentencia sumaria por insuficiencia de prueba, la parte promovida puede, entre otras cosas, alegar que la moción es prematura porque el descubrimiento es inadecuado, está a medias o no se ha realizado; o que éste, por su naturaleza, no es un caso que conviene se resuelva por el mecanismo de sentencia sumaria. *Medina v. M.S. & D. Química P.R. Inc., supra.*

Por último, si una parte resulta inconforme con el dictamen relacionado con la solicitud de sentencia sumaria tiene derecho a recurrir a la etapa apelativa. En tales circunstancias, nos encontramos en la misma posición que el foro primario al evaluar la procedencia de una sentencia sumaria. *Cruz, López v. Casa Bella y otros, supra,* a la pág. 994; *Birriel Colón v. Econo y otro, supra,* a la pág. 91. Así que, ostentamos la facultad de examinar *de novo* el expediente y aplicar los criterios que exigen la Regla 36 de Procedimiento Civil, *supra,* y la jurisprudencia interpretativa. *Roldán Flores v. M. Cuebas et al.,* 199 DPR 664, 679 (2018). No obstante, nuestra autoridad revisora es limitada, pues solo podemos determinar si existe o no alguna controversia genuina de hechos materiales y esenciales, y si el derecho se aplicó de forma correcta. *Meléndez González et al. v. M. Cuebas,* 193 DPR 100, 114-155 (2015). Esta limitación responde a que carecemos de facultad para adjudicar hechos materiales en disputa, toda vez que

esa tarea corresponde al foro primario. *Íd.*; *Vera v. Dr. Bravo*, 161 DPR 308, 335 (2004).

**B.**

Es pilar fundamental de nuestro acervo contractual puertorriqueño el principio de la libertad de contratación. *Batista Valentín v. Sucn. José E. Batista Valentín y otros*, 2025 TSPR 93, 216 DPR ___ (2025). A base de éste, las partes contratantes pueden establecer las condiciones que tengan por conveniente, siempre que éstas no sean contrarias a la ley, a la moral o al orden público. 31 LPRA sec. 6242. Así, se posibilita que las partes puedan contratar cuando quieran, como quieran y con quien quieran. J. Puig Brutau, Fundamentos de Derecho Civil: Doctrina General del Contrato, 3ra ed., Barcelona, Ed. Bosch, 1988, T. II, Vol. I, pág. 5.

Es norma sólidamente establecida en nuestra jurisdicción que el contrato tiene fuerza de ley entre las partes, por lo que desde el momento de su perfeccionamiento cada contratante debe actuar de buena fe en el cumplimiento de su obligación. 31 LPRA sec. 9754; 31 LPRA sec. 8983. Es por ello que existe un contrato desde que dos o más partes expresan su consentimiento en la forma prevista por la ley, para crear, regular, modificar o extinguir obligaciones. 31 LPRA sec. 9751.

En ese sentido, un contrato es vinculante desde que concurren los siguientes requisitos: (1) consentimiento de los contratantes; (2) objeto determinable y (3) causa lícita. 31 LPRA 6131; 31 LPRA sec. 6142; *Díaz Ayala et al. v. E.L.A.*, 153 DPR 675, 690-691 (2001). Consecuentemente, "cuando la ley no designa una forma para la realización de un negocio jurídico, se puede utilizar aquella que se considere conveniente". 31 LPRA sec. 6161.

Ahora bien, en los contratos con prestaciones recíprocas se encuentra implícita la facultad de resolver el contrato por falta de

cumplimiento con una obligación principal. 31 LPRA sec. 9823. Esto es, el perjudicado puede reclamar el cumplimiento del contrato o la resolución de la obligación con el resarcimiento de los daños causados. *Íd.* El incumplimiento de una obligación recíproca conlleva un efecto resolutorio siempre que la obligación incumplida sea una esencial o que su cumplimento constituya el motivo del contrato para la otra parte. *NECA Mortg. Corp. v. A&W Dev. S.E.*, 137 DPR 860, 875 (1995). Así, nuestro más Alto Foro ha expresado que:

> *La exigencia de que la obligación incumplida sea la principal responde a un interés superior, acorde con el principio de la buena fe, de evitar el abuso en el ejercicio de las acciones resolutorias, promover el cumplimiento de los contratos e impedir que, a través de una infracción menor, una de las partes trate de liberarse del vínculo porque ya no le conviene o no le interesa. Los tribunales deberán tener bien presente que el Art. 1077 del Código Civil, supra, dispone que el tribunal decretará la resolución si no existen causas justificadas que le autoricen para señalar un plazo. Íd.*, a las págs. 875-876 (cita omitida).

En materia contractual, es norma conocida que, "si los términos de un negocio jurídico bilateral son claros y no dejan duda sobre la intención de las partes, se estará al sentido literal de sus palabras". 31 LPRA sec. 6342. Es por ello que nuestro Tribunal Supremo ha reconocido que cuando los términos de un contrato, sus condiciones y sus exclusiones son claros y específicos, y no dan margen a ambigüedades o diferentes interpretaciones, así deben aplicarse. *San Luis Center Apts. et al. v. Triple-S*, 208 DPR 824, 832 (2022); *Rivera Rodríguez v. Rivera Reyes*, 168 DPR 193, 212 (2006).

No obstante, cuando de la lectura del texto, las cláusulas no son claras o no permiten una comprensión única de lo acordado, los tribunales estamos llamados a interpretar el contrato partiendo de la verdadera y común intención de las partes. *Merle v. West Bend Co.*, 97 DPR 403, 409-410 (1969). Igualmente, se debe

presuponer la "lealtad, corrección y buena fe en su redacción, e interpretarlo de manera tal que lleve a resultados conformes a la relación contractual y que estén de acuerdo con las normas éticas". *SLG Irizarry v. SLG García,* 155 DPR 713, 726 (2001).

Partiendo de esta premisa, al momento de interpretar el contrato y establecer cuál es la intención de las partes, debemos recurrir a las normas de hermenéutica contractual establecidas en los Arts. 353 al 358 del Código Civil de Puerto Rico, 31 LPRA secs. 6341-6346. En lo específico a la controversia ante nos, el Código Civil establece que, si el negocio jurídico es bilateral, la disposición ambigua debe interpretarse en sentido desfavorable a quien la redactó y en favor de la parte que tuvo menor poder de negociación. 31 LPRA sec. 6346. Por otro lado, las cláusulas del contrato se interpretarán "las unas por medio de las otras, ya pertenezcan al mismo negocio jurídico, ya a negocios jurídicos conexos, y mediante la atribución del sentido apropiado al conjunto". 31 LPRA sec. 6344. Es decir, se analizarán en su totalidad con el propósito de entender su verdadero significado. *CNA Casualty of P.R. v. Torres Díaz*, 141 DPR 27, 39 (1996).

Por su parte, un contrato se considera celebrado por adhesión cuando el aceptante se ve obligado a aceptar los términos previamente establecidos. 31 LPRA sec. 9802. Las disposiciones de este tipo de contrato deben también ser interpretadas en sentido desfavorable a la persona que las redactó y en favor de la persona que se vio precisada a aceptar su contenido. *Íd.* Así pues, son especialmente anulables en los contratos celebrados por adhesión las cláusulas que no se redactan de manera clara, completa y fácilmente legible y aquellas que limitan al adherente la interposición de acciones. 31 LPRA sec. 9803.

Ahora bien, los tribunales tenemos la ineludible labor de velar por el cumplimiento específico de toda obligación contractual,

sin relevar a las partes contratantes del cumplimiento de ésta. Siempre velando porque el contrato esté enmarcado en el ámbito de lo legítimo y no adolezca de vicio alguno. *Cervecería Corona v. Commonwealth Ins. Co.*, 115 DPR 345, 351 (1984); *Olazábal v. U.S. Fidelity,etc.,* 103 DPR 448, 462 (1975).

**C.**

Dispone el Art. 1536 del Código Civil de 2020, en su parte pertinente, que "[la] persona que por culpa o negligencia causa daño a otra, viene obligada a repararlo". 31 LPRA sec. 10801. En cuanto a este precepto y su aplicación, se ha establecido que sólo procede la reparación de un daño cuando se demuestren los siguientes elementos indispensables: (1) el acto u omisión culposa o negligente; (2) la relación causal entre el acto u omisión culposa o negligente y el daño ocasionado; y (3) el daño real causado al reclamante. *Inmob. Baleares et al. v. Benabe et al.*, 214 DPR 1109, 1125 (2024); *Nieves Díaz v. González Massas*, 178 DPR 820, 843 (2010).

En particular, el concepto de daños ha sido definido como "todo menoscabo material o moral causado contraviniendo una norma jurídica, que sufre una persona y del cual haya de responder otra". *López v. Porrata Doria*, 169 DPR 135, 151 (2006). En esa misma línea doctrinal, se ha establecido que la culpa o negligencia es la falta del debido cuidado que consiste en no anticipar y prever las consecuencias racionales de un acto o la omisión de un acto, que una persona prudente y razonable habría previsto en las mismas circunstancias. *Nieves Díaz v. González Massas, supra*, a la pág. 844; *Rivera v. S.L.G. Díaz,* 165 DPR 408, 421 (2005); *Toro Aponte v. E.L.A.*, 142 DPR 464, 473 (1997); *Ramos v. Carlo,* 85 DPR 353, 358 (1962). Respecto a la relación causal, ésta es un componente imprescindible en una reclamación en daños y perjuicios, ya que "es un elemento del acto ilícito que

vincula al daño directamente con el hecho antijurídico." *Rivera v. S.L.G. Díaz, supra,* a la pág. 422. Del daño culposo o negligente surge el deber de indemnizar que "presupone nexo causal entre el daño y el hecho que lo origina, pues sólo se han de indemnizar los daños que constituyen una consecuencia del hecho que obliga a la indemnización". *López v. Porrata Doria, supra,* a la pág. 151.

Esto último se refiere a la teoría de causalidad adecuada que rige en nuestro ordenamiento. De acuerdo a ella, no es causa toda condición sin la cual no se hubiera producido el daño, sino la que ordinariamente lo produce según la experiencia general. *Montalvo v. Cruz,* 144 DPR 748, 756 (1998). La jurisprudencia ha sostenido que un daño parece ser el resultado natural y probable de un acto negligente, si después del suceso y mirando retroactivamente dicho acto, tal daño aparece como la consecuencia razonable y ordinaria del acto. *Torres Trumbull v. Pesquera,* 97 DPR 338, 343 (1969); *Estremera v. Inmobiliaria RAC, Inc.,* 109 DPR 852, 856 (1980). El principio de causalidad adecuada requiere que en todo caso de daños y perjuicios el demandante pruebe que la negligencia del demandado fue la que con mayor probabilidad causó el daño sufrido. *Parrilla Báez v. Ranger American of P.R.,* 133 DPR 263, 270 (1993). De esta forma, un demandado responde en daños si su negligencia por su acción u omisión es la causa próxima del daño, aun cuando no sea la única causa del daño. *Velázquez v. Ponce,* 113 DPR 39, 45 (1982). Por tanto, la cuestión se reduce a determinar si la ocurrencia del daño era de esperarse en el curso normal de los acontecimientos o si, por el contrario, queda fuera de ese posible cálculo.

**D.**

Nuestro ordenamiento jurídico contempla la imposición de honorarios por razón de temeridad o frivolidad en la Regla 44.1(d) de Procedimiento Civil, 32 LPRA Ap. V, R. 44.1(d):

*En caso que cualquier parte o su abogado o abogada haya procedido con temeridad o frivolidad, el tribunal deberá imponerle en su sentencia al responsable el pago de una suma por concepto de honorarios de abogado que el tribunal entienda correspondan a tal conducta.*

El amplio concepto de temeridad conlleva aquellas actuaciones de un litigante que conduzcan a un pleito que pudo evitarse, que provoque la prolongación indebida del trámite judicial, o que obligue a la otra parte a incurrir en gastos innecesarios para hacer valer sus derechos. *SLG González-Figueroa v. SLG et al.*, 209 DPR 138, 148 (2022). Véase, también, *Andamios de P.R. v. Newport Bonding,* 179 DPR 503, 520 (2010). Un litigante perdidoso actúa con temeridad cuando con terquedad, obstinación, contumacia, impertinencia e insistencia en una actitud desprovista de fundamentos, obliga a la otra parte, innecesariamente, a asumir las molestias, gastos, trabajo e inconvenientes de un pleito. *González Ramos v. Pacheco* Romero, 209 DPR 138, 148-149 (2022); C.*O.P.R. v. S.P.U.,* 181 DPR 299, 342 (2011); *S.L.G. Flores-Jiménez v. Colberg,* 173 DPR 843, 866 (2008). En otras palabras, "la temeridad se manifiesta cuando la actitud de la parte afecta el buen funcionamiento y la administración de la justicia, al punto que sujeta al litigante inocente a una ordalía judicial innecesaria". *Asoc. Salud Primaria y otros v. ELA,* 2025 TSPR 75, 216 DPR __ (2025), citando *Fernández v. San Juan Cement Co., Inc.*, 118 DPR 713, 718 (1987).

No obstante, la imposición de honorarios por temeridad no opera de modo automática. Su concesión depende exclusivamente de la determinación que haga el juzgador en torno a si la parte perdidosa o su abogado actuó o no con temeridad. *PR Fast Ferries et al. v. AAPP,* 213 DPR 103, 115 (2023); *Corpak, Art Printing v. Ramallo Brothers,* 125 DPR 724, 736 (1990). A tales efectos, le corresponde al tribunal evaluar las siguientes consideraciones: (1)

el grado de temeridad; (2) el trabajo realizado; (3) la duración y naturaleza del litigio; (4) la cuantía involucrada, y (5) el nivel profesional de los abogados. *C.O.P.R. v. S.P.U., supra*, a la pág. 342-343, (citando a R. Hernández Colón, <u>Derecho Procesal Civil</u>, San Juan, Ed. LexisNexis, 2010, Sec. 4402).

Así pues, una parte es temeraria cuando insiste en alegar algo sin alguna prueba fehaciente, niega los hechos que le constan o son de fácil corroboración y dilata los procedimientos judiciales para no responder por sus obligaciones. *Consejo Titulares v. MAPFRE*, 2024 TSPR 140, 215 DPR __ (2025); *SLG González-Figueroa v. SLG et al., supra*, a las págs. 149-150. A modo ilustrativo, el foro supremo local ha delimitado las siguientes circunstancias como escenarios de temeridad o frivolidad:

> *(1) contestar una demanda y negar responsabilidad total, aunque se acepte posteriormente; (2) defenderse injustificadamente de la acción; (3) creer que la cantidad reclamada es exagerada y que sea esa la única razón que se tiene para oponerse a las peticiones del demandante sin admitir francamente su responsabilidad, pudiendo limitar la controversia a la fijación de la cuantía a ser concedida; (4) arriesgarse a litigar un caso del que se desprendía prima facie su responsabilidad, y (5) negar un hecho que le conste es cierto a quien hace la alegación. C.O.P.R. v. S.P.U., supra*, a la pág. 342.

Sin embargo, la concesión de honorarios por temeridad no procede cuando un litigante perdidoso ejerce su derecho a defenderse. En esa línea, el Tribunal Supremo de Puerto Rico ha establecido aquellos escenarios que no ameritan la imposición de estos honorarios:

> *[E]n innumerables ocasiones hemos expresado que no procede la imposición del pago de honorarios de abogado cuando lo que se enuncia ante el tribunal son controversias complejas y novedosas que no han sido resueltas; cuando se actúa acorde con una apreciación errónea del derecho y no hay precedentes establecidos sobre el asunto, o cuando existe alguna discrepancia genuina en cuanto a quién favorece el derecho aplicable. VS PR, LLC v. Drift-Wind*, 207 DPR 253, 277 (2021); *Santiago v. Sup. Grande*, 166 DPR 796, 821 (2006).

Por último, el foro primario goza de la facultad para imponer los honorarios de abogado a la parte que haya procedido con temeridad o frivolidad a tenor con la Regla 44.1 de Procedimiento Civil, *supra*. *Andamios de P.R. v. Newport Bonding, supra,* a la pág. 546. Efectuado el análisis discutido, el tribunal impondrá el pago de una suma por este concepto cuando determine que cualquier parte o su abogado actuó temerariamente.

Esta determinación es un asunto que descansa en la discreción del tribunal. *Pérez Rodríguez v. López Rodríguez et al.,* 210 DPR 163 (2022); *P.R. Oil v. Dayco,* 164 DPR 486, 511 (2005). Por ser la determinación de temeridad de carácter discrecional, solo intervendremos con ella cuando nos enfrentemos a un craso de abuso de discreción. *González Ramos v.* Pacheco, *supra,* a la pág. 150; Andamios *de P.R. v. Newport Bonding, supra,* a la pág. 546; *S.L.G. Flores-Jiménez v. Colberg, supra,* a la pág. 866. Al respecto, conviene precisar que, la jurisprudencia ha establecido aquellas instancias constitutivas de abuso de discreción:

> *Un tribunal puede incurrir en abuso de discreción cuando el juez: ignora sin fundamento algún hecho material; cuando le concede demasiado peso a un hecho inmaterial y funda su decisión principalmente en ese hecho irrelevante, o cuando éste, a pesar de examinar todos los hechos del caso, hace un análisis liviano y la determinación resulta irrazonable. Citibank et al. v. ACBI et al.,* 200 DPR 724, 736 (2018).

Así pues, "el ejercicio de este discernimiento se encuentra estrechamente relacionado con el concepto de razonabilidad". *Rivera et al. v. Arcos Dorados et al.,* 212 DPR 194, 210 (2023). La discreción debe nutrirse de un juicio apoyado en la razonabilidad y fundamentado en un sentido llano de justicia; no es función al antojo o voluntad de uno, sin tasa ni limitación alguna. *Citibank et al. v. ACBI et al., supra,* a la pág. 735; *SLG Zapata-Rivera v. J.F. Montalvo,* 189 DPR 414, 435 (2013).

**III.**

En el presente caso, la apelante nos solicita la revocación de la Sentencia emitida por el TPI en la cual se declaró Ha Lugar la solicitud de sentencia sumaria presentada por BANCOOP. Como resultado, el foro primario desestimó, con perjuicio, la Demanda presentada por FEDECOOP e impuso el pago de honorarios por concepto de temeridad.

Conforme adelantáramos, al momento de revisar una determinación del foro de instancia respecto a una solicitud de sentencia sumaria, estamos llamados a realizar una revisión de *novo* y limitarnos únicamente a adjudicar las controversias con los documentos que obran en el expediente ante el foro *a quo.*

Al examinar la Moción de Sentencia Sumaria presentada por BANCOOP, juzgamos que, ésta cumplió sustancialmente con los requisitos esbozados en la Regla 36.3 (a) de Procedimiento Civil, *supra.* En su moción incluyó una lista de hechos incontrovertidos, fundamentados por diferentes deposiciones, el contrato que rige la relación de las partes, estados financieros, entre otros. Hacemos constar que los anejos se presentaron, en la misma fecha, mediante la Moción Sometiendo Anejos a Moción de Sentencia Sumaria.

Por otro lado, la Oposición a Moción de Sentencia Sumaria presentada por la apelante, no cumplió a cabalidad con los requisitos que le impone la Regla 36.3(b) de Procedimiento Civil, 32 LPRA Ap. V, R. 36.3(b). Resaltamos que la apelante se limitó a admitir o negar la propuesta de hechos incontrovertidos del apelado. Es decir, no expuso las controversias persistentes que impidieran la disposición del caso sumariamente. Sin embargo, hacemos constar que incluyó, a modo de ejemplo, que existía una controversia en si el apelado podía invocar la clausula de relevo de responsabilidad por el término acordado, cuando estos

incumplieron con su obligación de autorizar una transferencia en ausencia de las dos (2) firmas requeridas.

Según lo establecido en los acápites anteriores, en nuestro ordenamiento jurídico procede dictar sentencia sumaria si conforme a la evidencia presentada, no existe controversia real y sustancial en cuanto a algún hecho esencial y pertinente del caso. 32 LPRA, Ap. V, R. 36.3. Un hecho material es aquel que tiene el potencial de impactar el resultado de la reclamación. *Oriental Bank v. Caballero García, supra,* a la pág. 679. Para ello, el Tribunal debe tener a su disposición todos los hechos necesarios para resolver la controversia. *Íd.*, a la pág. 678. Es decir, el foro primario deberá dictar sentencia sumaria cuando ante los hechos materiales no controvertidos: (1) el promovido no puede prevalecer frente al derecho aplicable, y (2) el tribunal cuenta con la verdad de todos los hechos necesarios para resolver la controversia. *Íd.*

En armonía con el examen de *novo* y en cumplimiento con nuestra función revisora, encontramos que, la Sentencia apelada cumple con los requisitos de forma y fue dictada conforme a derecho. Como consecuencia, acogemos las determinaciones de hechos del foro primario y las hacemos formar parte de esta Sentencia. Además, resolvemos que el foro apelado no incidió en su determinación al disponer del caso mediante la vía sumaria. Veamos.

En síntesis, la apelante sostiene que, si BANCOOP hubiera cumplido con las obligaciones pactadas, la compra de cartera de préstamos por la cantidad de $3,217,830.13 no hubiera ocurrido. Por otro lado, el apelado argumenta que el contrato contiene varias cláusulas que le relevan de responsabilidad y/o le impiden a FEDECOOP realizar una reclamación.

Surge de la evidencia presentada que la Resolución Corporativa requiere la firma de dos (2) de los tres (3) miembros

autorizados ya fuera: (1) Pedro García Figueroa, presidente ejecutivo; (2) Fernando Zavala Ruiz, gerente de operaciones; y (3) Adelita Álvarez Reyes, secretaria administrativa; para realizar transacciones en contra de la cuenta de FEDECOOP. Ahora bien, BANCOOP demostró que esta compra se originó, el 15 de febrero de 2022, en otra institución bancaria de la cual surge un cheque de gerente que contaba con las firmas del Sr. Zavala Ruiz y la Sra. Álvarez Reyes. Posteriormente, el 16 de febrero de 2022, se remitió una misiva a BANCOOP, con la firma del Sr. García Figueroa, solicitando la transferencia a la cuenta de SOLCOOP. De acorde al contrato, la Clausula 1.3.3 se le confería una leve discreción al apelado sobre aquellas transacciones que surgieran como uso y costumbre del negocio. De los documentos presentados se desprende que este ejercicio se realizó en al menos tres (3) ocasiones previas, ninguna objeto de impugnación.

Por otro lado, la apelante sostiene que esta gestión se realizó sin el conocimiento o la aprobación de la Junta de Directores. Conforme a la Clausula 1.7.1 del contrato, la apelante disponía de un término de 10 días a partir del recibo del estado de cuenta para notificar a BANCOOP sobre cualquier transferencia, transacción o débito no autorizado. De lo contrario, el estado de cuenta se entiende como correcto y la apelante renuncia a cualquier reclamación, si alguna.

Al evaluar las deposiciones del Sr. García Figueroa y el Sr. Zavala Ruiz consta que, de ordinario, en estos tipos de transacciones se incluye a este último en las peticiones realizadas al banco. Es importante resaltar que el Sr. Zavala Ruiz formaba parte del Comité de Finanzas. Este cuerpo era encargado de generar un informe de finanzas mensual a FEDECOOP, el cual posteriormente sería objeto de discusión por la Junta de Directores. Incluso, la señora Nayda Rivera Marrero (Sra. Rivera

Marrero), presidenta de la Junta de Directores, era parte del Comité de Finanzas. Además, en el informe correspondiente a febrero de 2022 constan las firmas del Sr. Zavala Ruiz, la Sra. Rivera Marrero, el Sr. César Santiago, subtesorero, y el Sr. Pedro Juan Ortiz, tesorero. Es forzoso concluir que, al examinar el estado de cuenta, en conjunto con el informe de finanzas, la Junta de Directores contaba con la información sobre la compra de la cartera de préstamos previo a septiembre de 2022, según alegaron. Por lo que la Junta de Directores estuvo en posición de cuestionar u objetar la compra dentro de los términos y condiciones del contrato.

Del mismo modo, el contrato incluye dos (2) cláusulas de relevo de responsabilidad. La sección 3.20 expresa que BANCOOP será responsable únicamente en los casos en los que el daño sea resultado de la negligencia crasa o los actos intencionales de sus funcionarios. Empero, el Banco será exento de la responsabilidad en la medida en la que FEDECOOP pudiera haber evitado o mitigado los daños mediante una verificación razonable de la información provista por el Banco. Dicho esto, la cláusula 1.7.1 también releva de responsabilidad a BANCOOP en aquellos casos de falsificación, la emisión no autorizada de cheques o transferencias electrónicas.

Queda claramente evidenciado que, independientemente de los procedimientos establecidos para la autorización de una transacción, la reclamación de FEDECOOP es a destiempo e improcedente en virtud del acuerdo entre las partes. Pues el contrato contiene múltiples cláusulas que relevan expresamente de responsabilidad al apelado. Por consiguiente, la apelante no nos ha puesto en posición de intervenir con el dictamen del foro primario. Lo cierto es que FEDECOOP descansó en meras alegaciones, haciendo referencia a dos (2) de los anejos

presentados por el apelado en la Moción de Sentencia Sumaria. Igualmente, se limitó a presentar como evidencia la Contestación a Interrogatorio y Requerimiento de Documentos de la Sr. Rivera Marrero.

Atendido lo anterior, debemos determinar si erró el foro primario en la imposición de honorarios de abogado por concepto de temeridad. Adelantamos que, por ser de carácter discrecional, solo intervendremos con ella cuando nos enfrentemos a un craso de abuso de discreción. *González Ramos v.* Pacheco, *supra.*

Evaluado el expediente apelativo, no encontramos razón alguna para alterar la conclusión del foro de instancia. La prueba no demuestra abuso de discreción y se encuentra dentro del ámbito discrecional que posee el foro primario. Por consiguiente, estamos impedidos de alterar la determinación apelada, entendiendo que la cantidad impuesta es una justa y razonable. Concluimos que el segundo error tampoco fue cometido.

**IV.**

Por los fundamentos que anteceden, los que hacemos formar parte de este dictamen, confirmamos la Sentencia emitida por el Tribunal de Primera Instancia, Sala Superior de San Juan.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones